CHARLES M. ALCOTT. PLAINTIFF IN ERROR, v. PUBLIC SERVICE CORPORATION OF NEW JERSEY, DEFENDANT IN ERROR.

Submitted June 25, 1909—Decided November 15, 1909.

1. In an action for damages for an injury claimed to have been sustained because of negligence of defendant in permitting a dangerous and defective condition of a crossing switch between street car tracks, which alleged condition should, by proper inspection, have been discovered, and, by proper diligence, have been remedied, evidence of the same condition existing within a reasonable time, both before and after the injury sued for, is admissible in corroboration of evidence that such condition existed, at the time of such injury; and such evidence as to its previous existence is also available to show its persistence for such a length of time that defendant, with due diligence, should have discovered and rectified it.

2. *Temperance Hall Association* v. *Giles*, 4 *Vroom* 260, and *Bobbink* v. *Erie Railroad Co.*, 46 *Id.* 913, distinguished; *Annapolis Gas, &c., Co.* v. *Fredericks*, 109 *Md.* 595, disapproved.

On error to the Supreme Court, whose opinion is reported in 48 *Vroom* 110.

For the plaintiff in error, *John W. Wescott.*

For the defendant in error, *Edward Ambler Armstrong.*

The opinion of the court was delivered by

PARKER, J. Judgment in favor of the plaintiff in error was reversed in the Supreme Court on the ground that the proof showed, without contradiction, that the switching device in which plaintiff's wagon wheel seems to have caught was of standard pattern, in common use and had been properly laid and inspected. The propriety of that determination is now before us for review. The circumstances of the accident are set forth in the opinion of the Supreme Court and need not be here repeated in detail.

We think that court erred in holding that the evidence showed proper inspection of the switch so conclusively as to remove that element of the case from the consideration of the jury. A legitimate theory of the causation of the accident is that when plaintiff turned his horses off the street car track and the front wheels of the heavy omnibus skidded along the track without leaving it, the tire of the right wheel, which was eleven-sixteenths of an inch thick and projected outward from the felloe one-eighth of an inch, caught under the "butt," or end of the piece known as the mate. Manifestly, this could not have happened unless the mate either was or was capable of being raised above the main rail at least the thickness of the tire. That this fact would indicate that the appliance was in bad order is inferable from the evidence of one of the witnesses for the defendant company, who testified that the mate was constructed to fit closely into the side of the rail lapping both above and below the tram or horizontal tread, with a play of one-eighth of an inch both above and below, so that if pressed up closely against the under side of the rail the tongue would be a quarter of an inch above the rail, but no more. If, then, it was raised about three-quarters of an inch, as the jury might have found on the evidence, an inference that it was in bad order was clearly permissible. There was other evidence to the same effect. The plaintiff, for example, testified that the "iron and all was raised;" that one end had settled and the other end had raised; that the pavement next to the rail was in bad order.

There was also evidence tending to show that the switch was out of order some days prior to the accident in question. This evidence was objected to by defendant, and an exception that was taken to its admission will be dealt with presently. Taken with the other evidence, a jury question was presented whether the switch was out of order and had been allowed to become so by negligence of the defendant, notwithstanding testimony on the part of the defendant that inspections were regularly made and that it was found in good condition.

The judgment of the Supreme Court, reversing the trial court, should therefore be reversed unless justified by some

error at the trial that would vitiate the judgment in the trial court. Two points are urged by defendant in error; that the trial court admitted testimony of other accidents at this same switch shortly before and shortly after the accident to plaintiff; and that the court charged in effect that this testimony might be considered as throwing light on the question whether the switch was out of order at the time of the plaintiff's accident. It is claimed, on the authority of *Bobbink* v. *Erie Railroad,* 46 *Vroom* 913, decided by this court, that the testimony was improper and that the court should not have alluded to it in the charge. We think that the weight of later authority and the better reasoning favor the view that the action of the trial court was proper. One witness testified that his wagon was stopped in a similar manner, by the wheel catching in the switch, some thirteen days before plaintiff had that experience. Another witness testified that three days after the accident, as a result of his own wagon catching in the switch, he examined it, and his description of it at that time corresponded closely with plaintiff's description of it at the time of the accident in question.

Professor Wigmore, in the sixteenth edition of 1 *Greenl. Evid.* 81, lays down the doctrine that "where the matter in issue is the existence of a condition, quality, capacity, tendency, or the like, of an inanimate object—dangerousness, * * * &c.—there are three chief modes of evidencing this circumstantially. One consists in showing the prior or subsequent existence of the condition, and thence inferring its existence at the time in question. * * * Still another consists in showing particular instances on other occasions in which the quality, tendency, &c., of the thing in question has been exhibited, and thence inferring the general existence of that quality, &c. * * * The natural limitation of this sort of evidence is that the prior or subsequent time must be so near that nothing may be supposed to have occurred to cause a change; and the distance of time will depend entirely on the thing whose existence is in question."

He adds that "in evidencing a quality, tendency, capacity, &c., by instances of its effects or exhibitions or operations on

other occasions, the natural and logical limitation is that the evidential instances should have occurred under substantially the same circumstances or conditions as at the time in question, because otherwise they might well be attributed to the influence of some other element introduced by the differing circumstances." He concedes that the logical objection to this sort of evidence is the tendency to unfair surprise and confusion of issues; that in addition, the tendency of the courts has been to exclude this class of evidence in cases of deliberate experiment to test the particular quality, and in cases where it has been sought to show in defence, that the place, or appliance, or what not, had long been in use without accident, and *ergo* must be safe. Experimental evidence was excluded in *Libby, McNeill & Libby* v. *Scherman,* 146 *Ill.* 540; and the plan of showing safety by previous absence of accident was condemned by our Supreme Court in *Temperance Hall Association* v. *Giles,* 4 *Vroom* 260, and outside of this state in such cases as *Baltimore, &c., Turnpike* v. *Leonhardt,* 66 *Md.* 70; *Hodges* v. *Bearse,* 129 *Ill.* 87; *Lewis* v. *Smith,* 107 *Mass.* 334, and *Peverly* v. *Boston,* 136 *Id.* 366; although countenance is given to it in *Dougan* v. *Champlain Transportation Co.,* 56 *N. Y.* 1.

The learned author continues (at *p.* 87): "The use that has come most into controversy is that of other injuries at a highway, track, or machine, as evidence of its dangerous character, * * * the doctrines of unfair surprise and confusion of issues * * * have been thought to have an especial bearing here; and for some time * * * much distrust of this sort of evidence was shown. The almost universal attitude of the courts at the present time, however, apart from minor peculiarities, is to admit such evidence, subject to the limitations already described. * * * The other instances of injuries thus offered in evidence may concern defects in highways or defects in railroad tracks, machines, premises, and the like."

In *Collins* v. *Dorchester,* 6 *Cush.* 396, decided in 1850, it was held that the existence of a defect in a highway claimed to have caused injury to plaintiff, could not be shown by evi-

dence of a similar injury to another person at the same place. The doctrine of this case is said by Professor Wigmore to be in effect repudiated in Massachusetts, and the remarks of the court in *Bemis* v. *Temple,* 162 *Mass.* 342, 345, seem to point that way. At all events the admission of evidence of this class is supported by such cases as *District of Columbia* v. *Armes,* 107 *U. S.* 519, decided in 1883; a suit for injury resulting from a defective sidewalk, in which evidence of other accidents at the same place was held proper as showing both the danger of the place and notice thereof to the defendant; *Louisville, &c., Railroad Co.* v. *Wright,* 115 *Ind.* 378, involving injuries to a freight brakeman from being struck by an overhead bridge, in which evidence of similar injuries previously occurring was permitted to show notice to the company of the danger; *Salem Stone and Lime Co.* v. *Griffin,* 139 *Id.* 141, involving a similar ruling, and *City of Bloomington* v. *Legg,* 151 *Ill.* 9, a highway case, in which evidence of similar accidents was permitted both as to notice and to show the dangerous character of the place in question. In *Baird* v. *Daly,* 68 *N. Y.* 547, plaintiff's scow was partly swamped while in tow of defendant's tug, and the question was whether it was the fault of the scow or the tug. Plaintiff testified that the scow had been towed before safely with heavier loads, and it was held error to overrule questions on cross-examination tending to show that the scow had previously been sunk by accident. In *Hoyt* v. *New York, Lake Erie and Western Railroad,* 118 *N. Y.* 399, plaintiff claimed that he had been thrown from his wagon on account of its being partially tipped over, owing to a hole negligently allowed to remain at one of the railroad crossings of defendant. Offer to prove that the very next day plaintiff's wagon had a similar accident at another place where there was no hole, and that as an inference from this the trouble was not with the crossing but with the wagon, was overruled. This was held error, and the judgment reversed, the court advisedly putting the decision "in line with that numerous class of cases that where a defect is shown to exist, that fact may be strengthened by proof of other and similar

effects both before and after the effects were produced, which form the subject of the trial;" citing a number of cases.

The case of *Darling* v. *Westmoreland, 52 N. H.* 401, is cited by Professor Wigmore as a leading case. It was a suit against the municipality for defect in the highway. The defect alleged was a pile of lumber that was likely to frighten horses, and plaintiff's claim was that his horse was frightened by the lumber and backed off a bridge in consequence. Evidence that another horse had been similarly frightened by the same lumber was excluded. The court, in a long opinion by Justice Doe, held that the exclusion was erroneous and reversed the judgment, incidentally criticising the rule in Collins *v.* Dorchester as not called for by the facts in that case.

Temperance Hall Association *v.* Giles has been cited in a number of our later decisions, but only twice on the admissibility of evidence as to the occurrence or non-occurrence of other accidents under similar circumstances—first, in *Continental Match Co.* v. *Swett, 32 Vroom* 457 (at *p.* 458), where it was distinguished and the court noted that there were exceptions to the rule it lays down; the second time in *Bobbink* v. *Erie Railroad Co.,* 46 *Id.* 913, already cited. In the Continental Match Company case it was held in the Supreme Court that the discharge of a workman for incompetency as a defence to an action for breach of contract of employment might be supported by proof that his work in another factory, with similar materials and under similar circumstances, was unsatisfactory. The precise point decided in Temperance Hall Association *v.* Giles is not now in question, and we are not required to decide whether it was rightly decided in that aspect. Bobbink *v.* Erie Railroad is also clearly distinguishable, as there was no claim in that case that there was any defect in the crossing frog, but only that it might be improved upon, and the rejection of the evidence offered to show this was based on the ground that the rule of law under the circumstances required no more than the adoption of an appliance in general use, which the frog in question was conclusively shown to be.

Reverting to the case at bar, we are of opinion that the

evidence of a similar accident at the same place some few days before was proper both as supporting the plaintiff's evidence as to the condition of the switch at the time of his accident, and as tending to show that that condition had persisted so long that with proper care and inspection it should have been remedied before the plaintiff sustained his injury, and that as to the evidence of its similar condition two or three days afterwards, this was justified as corroborative of the plaintiff's testimony relative to that condition.

The case of *Annapolis Gas, &c., Co.* v. *Fredericks,* 109 *Md.* 595, is cited against the admissibility of evidence as to later conditions. The facts as stated by the court were that a live electric light wire was strung along the side of a bridge over the water and at a distance of nine feet five inches from the floor of the bridge. "The evidence tended to show," says the opinion, "that the wire, as originally constructed, was properly placed and located as to the safety of the public, because it was beyond the reach of those properly using the bridge." Plaintiff was on the bridge at night, and in grabbing for his hat, which blew off, he seized the wire and received a shock. The court said it was incumbent on him to show by competent evidence that the wire sagged at the time of the accident and the place of the injury, and that evidence that he had visited the place the next day and found the wire slack was inadmissible, and that this was no evidence that it was slack at the time of the accident. We cannot agree with the learned court on this point. The fact that a man in reaching for his hat which has blown off, reaches an electric wire normally suspended over nine feet up in the air seems to be rather satisfactory proof that the wire in question must have sagged somewhat. This being so, his examination the next day, the earliest time when he could see it, was no more than corroborative of the necessary inference from the occurrence of the accident. So in the case at bar, the evidence of an accident to the witness after the plaintiff's accident, simply led up to the investigation made by such witness to discover what caused the accident to himself, and was thus only incidental and not harmful; the material

part of his evidence was that he found, on examination as a result of his accident, certain conditions substantially identical with those that plaintiff testified to and at a period of time so close to the plaintiff's accident, though after it, that an inference was justified, though subject to contradiction and open to explanation, that the same condition obtained at the time plaintiff was injured. There was no error, therefore, in the admission of this testimony, and as it was properly admitted it follows as, of course, that comment on it by the court in the aspects we have noted was also proper. The charge of the court on this point was as follows:

"It has appeared from the testimony in this case that other accidents have occurred at this place. That testimony was introduced not for the purpose of showing any liability on the part of the company beyond this case, but simply as it might throw light upon the question of whether this track, this mate, was out of order at the time when this accident occurred, because the jury might infer that if an accident occurred just before or just after this occurred, that there must be something wrong with the track."

In view of the propriety of the evidence, this was unexceptionable. There was therefore no error at the trial in any of the aspects we have discussed, and no other point has been brought before us for review. It follows, therefore, that the judgment of the Supreme Court must be reversed and that of the Circuit Court affirmed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, GARRISON, SWAYZE, REED, PARKER, BERGEN, VOORHEES, BOGERT, VREDENBURGH, DILL, CONGDON, JJ.   11.