JOSEPHINE HALM, ADMINISTRATRIX, PLAINTIFF IN ERROR, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON, DEFENDANT IN ERROR.

Submitted December 6, 1909—Decided June 20, 1910.

1. Lighting a bridge by artificial light is no part of its erection, rebuilding or repair.
2. Proof that a guard rail has been placed at right angles to the side of a bridge where the highway is broader than the width of the bridge running from said bridge toward the side of the highway, assuming that such rail was so placed by the board of chosen

freeholders and forms a part of said bridge, is not evidence of wrongful neglect on the part of such board to erect, rebuild or repair the bridge, to sustain a recovery under the Bridge act (*Gen. Stat., p.* 307) for damages resulting from a vehicle running into such guard rail at night.

On error to the Supreme Court.

For the plaintiff in error, *Colby & Whiting.*

For the defendant in error, *John Griffin.*

The opinion of the court was delivered by

VOORHEES, J. The plaintiff's intestate, while riding at his son's invitation in an automobile driven by his son, on March 22d, 1908, at about seven fifteen P. M., on Harrison avenue, was injured by reason of the vehicle coming in contact with a guard rail at a bridge over Frank creek in said highway.

The bridge in question was a county bridge. It was not of the full width of the highway at the time of the accident, the proof being that some two years before the highway had been widened and curbed on one side, so that there was a space of about seven feet on the side of the bridge between it and the line of curbing. It was also shown that from the side of the bridge, extending at right angles toward the curb, there had been erected, by whom does not appear, a fence or barrier composed of two by four uprights carrying a top rail of four by six timber. This fence or barrier extended some three or four feet from the side of the bridge, the remaining space up to the curb being without any guard, so that a person driving along the curb would meet with no physical barrier to prevent him going into the creek.

The automobile in question had proceeded from Paterson to Newark, where the side oil lamps were lighted, but the large gas lamps were not. The journey was continued on the highway in question toward Jersey City. It was dark when the bridge was reached, and there was no light on the fence or railing, but there were lights along the highway, one arc light being within seventy feet of the bridge.

The driver describes the occurrence as follows:

"When we came to the bridge it was dark and there was no light there at all. We came along and we heard a crash of our machine." They came within five or ten feet of the bridge before they saw the railing and ran into it, going through it a few feet, tearing it away.

The declaration avers negligence in the defendant in the erection, rebuilding and repair of the bridge, whereby the same was dangerous, because vehicles "were likely to come suddenly, unexpectedly and unavoidably in contact with the railing." That the defendant failed to "light the bridge by artificial lights," and erected the bridge so negligently that "it was unsafe * * * for the persons to draw near to and enter upon the bridge."

At the conclusion of the plaintiff's case a nonsuit was granted. To review this judicial action this writ is being prosecuted.

As negligence of the driver cannot be imputed to the decedent, the question of contributory negligence does not arise.

The sole question, therefore, to be disposed of is the negligence of the defendant.

It is conceded that in the daytime the bridge was perfectly safe.

Section 9 of the Bridge act (*Gen. Stal., p.* 307) provides that if the "board of chosen freeholders shall wrongfully neglect to erect, rebuild or repair any bridge by reason whereof, any person or persons shall receive injury or damage in his or her persons or property, he or they may bring his or their action of trespass on the case * * * against said board of chosen freeholders * * * and recover judgment."

The scope of this act has been narrowed by this court to those cases in which injuries have been sustained, for failure of the bridge safely to perform its appropriate functions where of right there is a reliance upon them. *Jernee* v. *Monmouth,* 23 *Vroom.* 553. It is also settled that the above act gave a private remedy for the neglect of a public duty which at common law did not exist. *Maguth* v. *Freeholders,* 43 *Id.* 226.

Therefore, to warrant a recovery the case must be brought within the scope of this act.

The plaintiff's claim that the bridge should have been lighted by the freeholders must fail. Lighting a bridge by artificial light is no part of its erection, rebuilding or repair.

The remaining allegations of negligence are that the defendants had repaired the highway over which they had control whereby it became wider than the bridge, and had neglected to provide guard rails or a wing fence running at a proper angle from the curb to the bridge.

It is at once perceived that a barrier placed at an acute angle to the curb, if not seen by a passing carriage, would be dangerous. So this railing was dangerous, if at all, simply because not seen. It is not argued that there was any defect either in the bridge proper or the railing. The latter was placed there for the purpose of warning and protection and appears to have been sufficient for that purpose. There is no provision of law that bridges should be constructed to the full width of the highway, and I apprehend it is a matter of common knowledge that they ordinarily do not extend to such width. This, therefore, did not constitute a wrongful construction. Nor can the fact that the barrier extended from the side of the bridge at a right angle, instead of being at an acute angle with the creek, be considered wrongful construction.

The ordinary rule must be applied to boards of freeholders regarding the building of bridges, that is, a breach of duty must be demonstrated by proof.

No proof has been offered that the construction was different from ordinary construction, or that it was not sufficient for the purpose for which it was intended. The case is not unlike *Feil* v. *West Jersey and Seashore Railroad Co.,* 48 *Vroom* 502, which arose over the construction of a railroad platform across which passengers were accustomed to pass. The court there said:

"There is nothing in the present case to support the conclusion that the defendant company failed to observe the degree of care indicated in the construction of its platform at

the Millville station. There is no proof that it differs in its character from platforms in general use by the defendant and other railroad companies, and no presumption of want of due care arises from the fact that a railroad company, presumably to meet the requirements of its traffic, has constructed its platform in such a way that one portion of it is lower than another, when the difference of level is not greater than the height of an ordinary step. Negligence must be proved, and, in a case like the present, that can be done only by showing that the platform is of a design which a reasonably careful judgment would disapprove as being likely to cause accident to persons using it as a way to and from trains. To hold otherwise would be to leave railroad companies to the mere caprice of juries, and subject them to the danger of being found guilty of negligence no matter what plan of construction they might adopt." See, also, *Weeks* v. *Freeholders,* 39 *Vroom* 622.

Proof that a guard rail has been placed at right angles to the sides of a bridge where the highway is broader than the width of the bridge, running from said bridge toward the side of the highway, assuming that such rail was so placed by the board of chosen freeholders, and forms a part of said bridge, is not evidence of wrongful neglect on the part of such board to erect, rebuild or repair the bridge, to sustain a recovery under the Bridge act for damages resulting from a vehicle running into such guard rail at night.

The judgment is affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, VOORHEES, MINTURN, BOGERT, VREDENBURGH, GRAY, DILL, CONGDON, JJ.   11.

*For reversal*—THE CHANCELLOR, PARKER, BERGEN, VROOM. JJ.   4.