AMELIA LEECH, RESPONDENT, v. HUDSON AND MANHATTAN RAILROAD COMPANY, APPELLANT.

Argued May 1, 1934—Decided October 2, 1934.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and BODINE.

For the appellant, *Edward A. Markley* (*Howard F. McIntyre*, on the brief).

For the respondent, *Joseph F. S. Fitzpatrick*.

The opinion of the court was delivered by

PARKER, J. The plaintiff, an intending passenger on the railroad of the defendant company, entered the Journal Square station of that company at about eight-forty-five A. M., on her way to New York, and was descending a long stairway known as No. 17 to reach the concourse and thence the train platform, when her right foot caught in an angle at the right end of a tread, tripping her up and causing her to fall to the foot of the stairway, sustaining injury, which is the basis of this suit. She had a verdict and judgment, which are before us on this appeal. The points argued are, generally speaking, refusals of the trial court to nonsuit and to direct a verdict for defendant; admission of certain evidence; exclusion of certain other evidence; alleged errors in the charge, and refusal of certain requests to charge.

The complaint alleges negligence in several respects, but the case as presented at the trial appears to be mainly confined to the first charge, viz., lack of proper care in constructing and maintaining the stairway "in a safe and standard manner so that same would be reasonably safe for persons intending to be passengers, using same."

The staircase was of iron or steel. The testimony of an architect called for plaintiff indicated that in such a staircase the ends of the risers and treads are bolted to an inclined stringer beam, which is usually of the channel type, *i. e.*, a plate with the side edges turned up at right angles, for rigidity; that customarily these flanges are turned outward, or away from the ends of the steps, and that this is standard practice; but that in the present case the flanges were turned inward, and consequently lapped over the ends of the treads

and risers some three inches, thereby forming a triangular pocket at the end of each step, which he described as a "trap," and testified was not of standard construction. This condition was shown by photographs admitted in evidence, and the plaintiff on redirect examination marked one of the angles on the photograph as the agency that caused her fall. There was a banister, but she did not use it, both hands being otherwise occupied. This banister naturally kept people out some three inches from the wainscoting, and may be said to have lessened the chances of catching one's toe in the pocket, but this was to some extent counteracted by a moulding, wider than the flange, and which consequently increased the width of the pocket. The same witness said this was the only stairway at Journal Square having the channels turned inward; that none in the Hudson Terminal or the Grand Central Terminal were so constructed, and that he had never seen any such pockets elsewhere. Defendant's architect witness testified on direct that he had never seen other stairways "exactly similar" nor "generally similar that he had noticed particularly," and that he "honestly did not recall any instance * * * where there is a channel turned in." He claimed, however, that the pockets were out of the way and said he did not consider it bad or faulty construction.

The motions to nonsuit and to direct a verdict were rested on the following grounds: (1) No proof of any negligence; (2) or of negligence proximately causing the accident; (3) contributory negligence; (4) no proof of any standard construction, and hence none of any deviation therefrom; (5) the proof showed merely an accident; (6) and that the recess was no part of the step used for traffic.

We are clear that these motions were properly denied. We think the evidence tended to indicate that standard construction was to turn the channels outward; but conceding for the sake of argument that no standard of construction, strictly so called, was shown, there was proof that this method of turning the channels inward was unusual, and neither architect felt able to say that he had ever seen just that sort of thing before. The case is not within the ruling in *Kingsley*

v. *Delaware, Lackawanna and Western Railroad Co.*, 81 *N. J. L.* 536, or in *Traphagen* v. *Erie Railroad Co.*, 73 *Id.* 759, where it appeared that there was no uniformity of plan among railroads in height of step, or distance of step from platform. It presents a situation which the jury could find was unique so far as the evidence showed, and which they could legitimately call a trap, as plaintiff's witness called it. Stairs, and particularly stairs in public places like railroad stations, used by multitudes daily, call for reasonable provision in planning and construction and provision against features which may cause accident, and no architectural code is required for the proposition that such stairs should not be so planned or constructed as to carry at the ends of each step recesses in which some person pushed against the wall by a crowd, as appellant suggests, or closely following the wall, as plaintiff said she was, may readily catch her foot and be thrown headlong. As to contributory negligence, the point, so far as we discern, is not now argued, and is without substance. The same may be said of the claim that the recess was no part of the step, which is a mere juggling with words.

We turn to the rulings on evidence.

An X-ray photograph was produced by Dr. Perlberg and he was allowed to testify to a fracture of the ilium. The objection to this was that the bill of particulars furnished by plaintiff on demand, early in the litigation, set up, not an actual fracture, but only a possible fracture. We see no merit in this point. The particulars as furnished gave notice that a fracture was suspected though not definitely ascertained, and that plaintiff might claim it at the trial. They were correct as of the time they were demanded and served. If defendant desired later information in preparing for trial, a further demand would have elicited it. But defendant was put on notice in the first instance. The argument made by defendant that mere possibilities are not cognizable, merely relates to the character of evidence to be adduced, and not to the sufficiency of notice that such evidence may be offered.

Medical testimony of loss of memory was objected to, as not within the particulars served. We agree with counsel for

respondent that it was fairly incidental to the particularized claim of "extreme nervousness."

The same witness, Dr. Trout, testified to making a physical examination of plaintiff, and his conclusions thereon. On cross-examination it developed that in addition to objective symptoms to which he testified, he had conversed with plaintiff and received certain information from her on which, in part, he had based his general conclusions. Whereupon counsel said to the court: "I ask that his testimony be stricken." The court denied the motion and this is urged as error. But the motion was too broad, as it included all the testimony, and some of it at least, viz., that relating to objective symptoms, was clearly competent.

The next point is that the court erroneously excluded certain evidence that "would have established that the stairway had been in daily use since 1918, was used by thousands and thousands of persons, particularly at the hour of the day at which plaintiff claims she fell, and that from that year to the time of the accident, no passenger or person had ever fallen on the particular stairway because of the presence of the recess thereon, and that in all those years no claim had ever been made by anyone, because of a fall occasioned by the presence of this recess." Such is the language of the brief.

The evidence offered is of precisely the character of that held in *Temperance Hall Association* v. *Giles,* 33 *N. J. L.* 260, to have been properly rejected, and the illuminating discussion in that case by Mr. Justice Depue leaves nothing to be said. The decision, though in this court, has been cited and relied on time and again, both here and in the Court of Errors and Appeals. A few of the cases particularly bearing on the point, are *O'Brien* v. *Staiger,* 101 *N. J. L.* 526; *Bobbink* v. *Erie Railroad Co.,* 75 *Id.* 913; *Alcott* v. *Public Service, &c., Co.,* 78 *Id.* 482, and *Crouse* v. *Stacy-Trent Co.,* 110 *Id.* 124.

The rule works both ways, as noted in the Temperance Hall case, 33 *N. J. L.* (at *p.* 264), so that as defendants were barred from showing no accidents as an argument that the stair was safe, so on the other hand, plaintiff would not have

been allowed to prove previous accidents to show that it was dangerous. *Crouse* v. *Stacy-Trent Co., supra.* It will do no harm to add that the propriety of the rule is not impugned by the fact that of the two witnesses offered by defendant on the point, one was the secretary of the company whose testimony was obviously hearsay, and the other the claim agent who could testify of his own knowledge merely to the receipt of claims for alleged accidents. The cases cited by appellant are not in point. In *Traphagen* v. *Erie Railroad Co., supra,* there was "a failure to prove any departure from the usage of other railroads." In *Hoff* v. *West Jersey Railroad Co.,* 45 *N. J. L.* 201, there was a standard appliance in general use. In the Kingsley case, *supra,* there was no standard, and the issue was one of obvious or inherent danger. Of this, the court said, there was no testimony other than that of the particular accident. The only question of evidence involved was the qualification of a civil engineer to express an opinion on the proper distance between car steps and platform. In *Fell* v. *West Jersey and Seashore Railroad Co.,* 77 *N. J. L.* 502, the court pointed out that there was no proof that the platform differed from those in general use. The cases from other states depend on their own facts, and perhaps on rules of law which do not obtain here, and in view of our own well settled rule, we deem it unnecessary to discuss them. What has been said is applicable to the refusal of a request to charge that the jury might consider the testimony that no accident had occurred, &c. There was no such testimony, it had been excluded and, as we have said, properly, hence the request was without support.

Some minor points on evidence are made: (a) on redirect, the plaintiff was asked, referring to an exhibit: Can you point out on that photograph what you caught your foot on?" This was objected to as improper redirect, and allowed over exception. The allowance was a matter of discretion, and defendant was permitted to cross-examine fully on it. Then the witness said it was the second or third step and was asked to mark the exhibit accordingly. The court ruled that if they were both alike she could mark the one selected. We see no error here.

(b), (c) Plaintiff's witness Lehmann, an architect, had measured the stairway and made a sketch drawing, which the court admitted over exception but afterwards struck out. This is urged for error, but the error was of course cured. Further, Lehmann was asked to testify to the measurements from his sketch. Counsel objected, but gave no reason, until the court had ruled. Passing this, the objections argued are that the testimony established no standard of construction, and that the witness was not qualified as an expert. We fail to see what expert qualifications were required for the making of measurements, and the witness as a professional architect had fairly qualified to speak on the dimensions of staircases. Moreover, the point at issue and on which the case turned, was not dimensions of stairs, but the existence of pockets at the end of them. We cannot see how defendant could have been harmed by the testimony, even if technically erroneous.

It is urged that the court erred in charging the jury as follows:

"If * * * you find first, that there was this condition in the stairway, and second, that it did not conform to the standards of safety which ordinarily prudent persons adopt and use and utilize, and that to construct it that way, or to maintain and operate it that way was negligence on the part of the defendant, and that that negligence on their part, if it so existed, was the proximate cause of her injury, then you would be justified in returning a verdict in her favor." The court added, what is not quoted in the ground of appeal: "if you find that she was not negligent on her part."

As to this the argument again is that plaintiff had not established any standard of construction, and that continued absence of accident showed that the construction was a reasonable and prudent one. What has been said above on this point need not be repeated here.

It is said that the trial court erroneously refused to charge the following portion of defendant's request to charge No. 3:

"The adoption of a method of platform construction which accords with that in general use by well regulated companies,

and which is approved by experience, is a due performance of duty which it owes to its passengers in that regard."

It should be a sufficient reply, that there was nothing in the evidence to support the assumptions of fact in the rejected sentence. The same may be said of the seventh request, which assumes that the stairway was similar to those in common use, and that there was failure to prove any departure from the usage of other railroads. What proof there was in the case, as we have said perhaps more than once, was to the effect that the stairway, in the matter of the "pockets," was not similar to those in common use, and that there was a departure from common usage.

This, we think, disposes of all the argued grounds of appeal. The judgment will be affirmed.