HARRY TRILLING, PLAINTIFF-APPELLANT, v. H. L. GREEN COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLEE.

Submitted January 19, 1943—Decided April 7, 1943.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PORTER.

For the plaintiff-appellant, *Quinn & Doremus.*

For the defendant-appellee, *Cox & Walburg* (*Harry E. Walburg,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. Plaintiff, prosecuting an action in negligence for personal injuries in the Court of Common Pleas of Monmouth County, was dismissed by judgment of nonsuit. He brings on this appeal alleging that the evidence supporting his claim raised questions of fact and that therefore the nonsuit was error. These are the facts: The plaintiff, a produce salesman, was engaged in delivering a crate of eggs to the defendant. As he was leaving the defendant's premises, descending a concrete ramp inside the building, he fell and was injured. Certain photographs showing the ramp, the defendant's stockroom at its lower level and kitchen at its upper level, were introduced in evidence and marked *P*-1, 2 and 3, respectively. The first two are reproduced in the state of case; the last, on which the plaintiff made marks at the trial to indicate just where he fell and where he finally landed after the fall, is not printed. We are therefore without the aid of that exhibit.

The complaint, in general terms, charged the defendant with negligence, in this: that foreign substances were placed or permitted to remain on the ramp which resulted in making it slippery and dangerous; that improper construction rendered its surface slippery; that it was poorly lighted; that it had been recently washed in a negligent manner by incompetent workmen, at a time when it would be dangerous to users; that improper materials were used; that safeguards to protect those using it were lacking; that there was a failure of proper lighting thus preventing the ramp from being washed properly, and that there was a failure to supervise and control the washing.

Plaintiff testified that he delivered the merchandise to the kitchen, as directed by defendant, and on his return, descending the ramp, his "right foot was lifted in the air and I went down on my right side, striking my right hip * * *." On arising he said his hands, trousers and coat were wet and, on being asked if he examined the surface to see what caused him to fall, he replied that he "saw some black spots. It looked wet and my hands and coat and trousers were wet." This was all the evidence concerning the fall. There was no testimony that he slipped on the wet or dark spot or just what these spots consisted of; nor is there any testimony that the floor had been recently washed. There was some allusion or incidental reference in the plaintiff's testimony to the presence of a porter on the scene at the time. The plaintiff says he saw a man standing near the ramp "doing something." Who he was or what task he was engaged in was not revealed and this line of inquiry was dropped. And so it seems reasonably clear up to this point that in the absence of any evidence as to what the wet or dark matter on the ramp was, how it came there or how long it had been there, this condition as a basis to sustain the charge of negligence fails. Nor was there any proof that the fact that the premises were dimly lit had any relationship to the accident.

The element of improper or non-standard construction as a basis for negligence remains to be considered. A construction engineer, called as a witness to support the plaintiff's charge of negligence, testified that the transverse metal plates in the ramp were smooth instead of abrasive; that the concrete surface was smooth and slippery, rather than rough to insure safe walking; that the metal cross-pieces were further apart than standard construction permits, and that they protruded a quarter-inch above the surface when the standard required that they be even with it. In brief, there was ample testimony that the ramp was not constructed according to the standard made out by the expert. The question now is whether the plaintiff's evidence established any causal link between his fall and the non-standard construction of the ramp. On the motion to nonsuit it is thoroughly settled that the plaintiff is entitled to have the court accept his testimony as correct

in all its detail, together with whatever fair inferences such testimony supports. This does not, however, relieve him of the burden of proving negligence or facts from which a jury might legitimately infer negligence or that the negligence charged is the proximate cause of the injury suffered. Plaintiff asks us to reverse the judgment on the authority of the following cases: *Martin* v. *Asbury Park*, 111 *N. J. L.* 364; 168 *Atl. Rep.* 612; *Leech* v. *Hudson and Manhattan Railroad Co.*, 113 *N. J. L.* 366; 174 *Atl. Rep.* 537; *affirmed*, 115 *N. J. L.* 114; 178 *Atl. Rep.* 747; *Hansen* v. *Brown*, 123 *N. J. L.* 223; 8 *Atl. Rep.* (*2d*) 330. None of these cases supports the appellant's position. In the Martin case there was evidence of improper construction and testimony that the treads of the steps of the structure—a public bathing pavilion —and the handrail were slippery and that plaintiff slipped because of the condition of the steps. There was proof, however, relating the consequences to the structural defect. There is no such proof in the case before us. In the Leech case plaintiff was injured by falling down a public stair leading to a railway station by catching her foot in the angle or pocket made by the tread of the step and a supporting beam that paralleled the declining pitch of the stairway; and it is not to be disputed that the injury resulted from the unusual and dangerous construction there present. The plaintiff's injury in the Hansen case was due to an unexpected and non-standard drop in the floor level of which there was no warning.

The case before us is barren of evidence as to the cause of the plaintiff's fall. It might have been due to the dampness of the ramp or some foreign substance thereon, or it might have been due to non-standard construction. There was no proof that the ramp had been washed down or that there was any foreign substance present or, if present, how it came to be there or for how long a time it remained; nor is there any proof that the fall was caused by the faulty construction of the ramp. Compare *Schnatterer* v. *Bamberger*, 81 *N. J. L.* 558.

We think the nonsuit was proper and the judgment will be affirmed.