18 N.J. Super. 450 (1952)
87 A.2d 444
SETH DOLAN, PLAINTIFF-APPELLANT,
v.
NEWARK IRON & METAL CO., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 10, 1952.
Decided March 19, 1952.
*452 Before Judges McGEEHAN, JAYNE, and WM. J. BRENNAN, JR.
Mr. Sidney M. Schreiber argued the cause for appellant (Messrs. McKeown, Schreiber & Lancaster, attorneys; Mr. Roger F. Lancaster, on the brief).
Mr. John E. Hughes argued the cause for respondents (Messrs. Shaw, Hughes & Pindar, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
The defendants are Newark Iron & Metal Co., a New Jersey corporation, and its employees, Buster Bough and John McCleave. The mishap from which this action originated was the occurrence on the evening of December 3, 1948, of a collision on State Highway No. 10 in the Township of Hanover, Morris County, between a passenger vehicle owned and operated by the plaintiff and a motor truck in charge of the defendant Bough which was *453 being towed by another truck driven by the defendant McCleave. The plaintiff's car proceeding easterly collided with the rear of the towed truck on the south lane of the highway. The jury rendered a verdict of no cause for action in favor of all of the defendants and against the plaintiff. An accordant final judgment was entered, from which the plaintiff appeals.
The background in view of which we consider the merits of the present appeal should, perhaps, be more comprehensively disclosed. Bough had undertaken at the direction of his employer, Newark Iron & Metal Co., to transport several tons of scrap metal from Wharton to Newark by means of a 1926 model Mack dump truck, and on the way the aged truck succumbed to the burdensome task. McCleave was dispatched with another veteran Mack truck, 1927 model, to rescue Bough. Upon reaching Bough, McCleave's truck was overheated and in dire need of water. Of pertinent significance is the fact that neither truck was equipped with electric lights. The only luminative instruments available were kerosene lamps which evidently required a replenishment of fuel. The lamps had "very small wicks." There was a "light rain" or "drizzle" and the atmosphere was "hazy." The mishap occurred about 7 P.M.
However, the Bough truck was attached by a tow line to the McCleave truck and the vehicles proceeded easterly at a speed of ten miles an hour on the highway. McCleave was able at Wycoff's Oil Station to obtain a supply of water for his truck but unable to procure kerosene until the vehicles arrived on the highway in front of the Minisink Oil Co. station situate on the north side of the highway. The trucks were not driven off the highway or across it to the parkway in front of the station but remained on the south lane while the oil in the lamps was replenished. One of the defendants stated that the trucks were in motion onward when the collision occurred.
The plaintiff testified that he was driving his vehicle at a speed of 20 to 30 miles per hour easterly on the south *454 lane looking watchfully ahead and saw nothing on the lane before him until he reached a point about eight or ten feet from a "big black object" with which his vehicle collided. He was thereby rendered unconscious. A passenger in an automobile proceeding westerly in passing by the trucks shortly before the collision noticed them, and in looking back at them saw no light on the rear of the towed truck.
It is evident that the predominant issue at the trial related to the degree of care the defendants had exercised in maintaining on the trucks and in particular on the rear of the towed truck, any signal device or any reasonably adequate light to warn other travellers of the presence of the trucks on the highway in the existing conditions.
It appears that a witness Munther was present at the trial to testify that about an hour and a half before the occurrence of this collision and at a point on the highway about two miles westerly therefrom, he too was operating his vehicle in an easterly direction and watching for vehicles ahead of him; that he suddenly came upon the trucks, on which he saw no light, and indeed came into collision with the rear of the towed truck.
The admissibility of that testimony was a subject of discussion with the judge in the absence of the jury at the commencement of the trial. Counsel for the plaintiff, respecting the tentative opinion of the judge, refrained from alluding to such testimony in his opening remarks to the jury and reserved the opportunity to proffer it during the progress of the trial. He did so and the judge resolved that it should be excluded:
"The Court: Your use of the testimony of Munther, as I take it, would be to show the condition of the tail light on the one truck at the time he had an accident with it. My thought about that is that is much too remote insofar as distance is concerned and insofar as time is concerned.

* * * * * * * *
All right. My reason for not allowing the testimony to go in on this case is that it is too remote from the standpoint of time and distance." *455 In addressing the court anent the subject, counsel for the plaintiff stated:
"I also urge it on the ground that the fact that their trucks were involved in this accident with Munther should have been notice to them of the inadequate equipment; and assuming the light was lighted, it should have been notice to them of the inadequacy of the equipment they had on that truck."
The propriety of the court's ruling is challenged on the present appeal and the point engages our primary attention because of the following testimony given by the defendant McCleave, who was presented as a witness for the plaintiff:
"Q. During that whole period of time from the time you hitched onto Bough's truck, including the time that you were stopped at the Wycoff Oil Station and when you started out again, and including the time that you were parked near the Minisink Oil Company, were the lights on Bough's truck lighted? A. Right.
Q. Were they generally in the same condition, particularly the tail light? A. Right.
Q. There was no change in the tail light from the time you started until this accident with the Dolan car occurred, is that right?

* * * * * * * *
The Witness: That's right.
Q. That is the tail light on the Bough truck? A. That's right.
Q. There was no change insofar as the headlights were concerned either, was there? A. Right.
Q. There was no change with regard to any of the lights on your truck? A. That's right.
Q. From the time you picked Bough up and hitched onto him until the Dolan accident occurred? A. That's right."
We are aware that in many cases of controverted facts, an infinite variety of extraneous circumstances may be suggested, which may bear remotely upon the issues involved. The admission of proof of such circumstances is ordinarily left to the discretion of the trial judge for the obvious reasons that the jury might be confused by the multitude of collateral issues tending to a miscarriage of the alleged action and to the expansion of the trial to an unreasonable extent. Schenck v. Griffin, 38 N.J.L. 462, 471 (E. & A. 1875); Worcester Loom Co. v. Heald, 78 N.J.L. 172 (Sup. Ct. 1909); Iverson *456 v. Prudential Insurance Co., 126 N.J.L. 280 (E. & A. 1941).
It is elementary, however, that evidence relevant and legally admissible for one purpose cannot be excluded because the jury may erroneously consider it useful for another purpose. Cautionary instructions limiting its evidential scope may properly be requested. Perry v. Levy, 87 N.J.L. 670 (E. & A. 1915); Millman v. U.S. Mortgage & Title Guaranty Co., 121 N.J.L. 28 (Sup. Ct. 1938); Jones v. Lahn, 1 N.J. 358 (1949).
We therefore concentrate our consideration upon the question whether in consequence of the testimony of the defendant that the condition of the lights remained unchanged, the tendered testimony was relevant to disclose notice to and knowledge of the defendants of the lack of a visible light or the hazardous insufficiency of the lights on the trucks, particularly of the light on the rear of the towed truck.
We refrain from indulging in a discussion of the authorities relating generally to the proof of similar occurrences, prior or subsequent to the one in issue, or to the general principle that a prior or subsequent existence of a condition is evidential of a later or earlier one. Cf. Wigmore on Evidence (3d ed.), §§ 437 and 2530; State v. Claymonst, 96 N.J.L. 1, 4 (Sup. Ct. 1921); Alcott v. Public Service Corporation, 78 N.J.L. 482 (E. & A. 1909); Millman v. U.S. Mortgage & Title Guaranty Co., supra; Orcutt v. Hoyt, 6 N.J. 46, 55 (1950).
Moreover while the admissibility of evidence of similar occurrences to prove notice or knowledge of danger is generally confined to conditions of permanency, because otherwise remoteness of time and place would render too speculative the inference that a temporary condition continued to exist, yet here we emphasize the positive evidence that the state and condition of the lights was the same at the time of both similar occurrences on the same highway on the same evening. Vide, Otis Elevator Co. v. Luck, 202 F. 452 (C.C.A. 9 *457 1913); Parisi v. Carl W. Bush Co., 4 N.J. Super. 472 (App. Div. 1949).
While the primary controversial issue of fact concerned the presence of any light whatever on the rear of the towed truck, yet the absence on the trucks of any electric lighting equipment, now commonly observed and anticipated to exist on motor vehicles, and the acknowledged use of kerosene lamps or lanterns projected the consideration also of the reasonable efficiency of the latter on a stormy night, and of the knowledge of the defendants in that particular.
In the existing state of the evidence in the present case, we are of the opinion that the proposed evidence of the witness Munther of the previous mishap on the same evening, on the same highway at a point not far distant from the place at which the second collision occurred, and having substantially the same characteristics was admissible, under appropriate restrictive instructions, upon the question of notice to or knowledge of the defendants that the kerosene lamps in the existing weather conditions were in reasonable probability dangerously inadequate. Whether in such circumstances the defendants in the exercise of reasonable care for the safety of others should have provided additional safeguards or should have continued, as they did, to use the highway with the same warning devices in the same state and condition seems to us to have been a relevant issue to submit to the jury. 38 Am. Jur. 1012, § 314; 20 Am. Jur. 281, § 303, et seq.; Annotation, 128 A.L.R. 595; Wigmore's Code of Evidence (2d ed.), §§ 442, 527; District of Columbia v. Armes, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618 (1882).
Was the rejection of the proposed testimony harmful and prejudicial to the plaintiff? We think so, especially when eventually tendered again by the plaintiff in rebuttal. The local chief of police, a witness for the defendants, was permitted to testify that at 9:30 o'clock on the evening of the collision, more than two hours after its occurrence, he made a series of tests to ascertain the visibility of the lamp on the *458 rear of the towed truck and stated that it was discernible at a distance of 1,000 feet. We recognize that the rejection of the testimony offered by the plaintiff following the admission of the testimony of the chief of police inevitably left the plaintiff in a disadvantageous position.
Our determination of the point discussed renders it unnecessary to comment upon the less impressive grounds of appeal. The judgment is reversed and the action returned to the Law Division for a new trial.