32 N.J. Super. 365 (1954)
108 A.2d 472
MICHAEL VANDER GROEF, PLAINTIFF-APPELLANT,
v.
THE GREAT ATLANTIC & PACIFIC TEA COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 11, 1954.
Decided October 15, 1954.
*367 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
Mr. Harry Chashin argued the cause for plaintiff-appellant (Messrs. Marcus & Levy, attorneys; Mr. Chashin and Mr. Hyman W. Rosenthal, of counsel and on the brief).
Mr. John J. Monigan, Jr., argued the cause for defendant-respondent (Messrs. Stryker, Tams & Horner, attorneys).
The opinion of the court was delivered by GOLDMANN, J.A.D.
The trial court granted defendant's motion for judgment of dismissal after plaintiff had completed the liability portion of the negligence action he had instituted against defendant. The court held that plaintiff had failed to prove negligence and proximate cause. This appeal ensued.
Defendant maintained a loading platform at the rear of its bakery premises on L Avenue, Newark. The platform was 44 inches above ground level. Plaintiff came to these premises on the afternoon in question, as he had some thousands of times over a period of at least eight years. He was a truck driver employed by an independent trucking company whose principal business was to supply trucking services to defendant. On this particular occasion plaintiff operated a *368 tractor-trailer combination. He was assisted by a helper who got off the truck and opened the rear doors of the trailer when they arrived at the rear of the building, preliminary to plaintiff finally backing the truck to a position flush with the loading platform. Having backed up the tractor-trailer, plaintiff descended from the cab of the tractor and attempted to jump up to the loading platform in order to make known to defendant's representatives the arrival of the truck and to assist in loading merchandise into the body of the trailer. He placed both hands on the edge of the loading platform. What happened after that is best told in his own words:
"After I put my hands on the edge, why, I threw my left leg, left foot and leg up on the edge of the platform and assisted myself with my hands to pull myself up that way, to raise my whole body up on the edge, and as I started to arise  I was still in a stooping position, and I put my right foot up, and my right foot slipped a little and I fell out the doorway on to the concrete. I fell out and fell on the concrete."
His testimony on cross-examination was:
"Q. Your right foot had not yet come up to the platform level. Is that right? A. When I fell, it had come up.
Q. But was it placed on the platform with your left? A. My left foot was on the platform and I had brought my foot up and set it on the platform. I was in a stooping position and my right foot slipped a little and I fell out.
Q. Were you holding on to the door at that time? A. No, sir. My hands were on the floor."
It was further brought out on cross-examination that plaintiff had many years before suffered an injury to his left foot, as a result of which he wore a heel bandage at all times. He admitted he had a "very slight limp" in the left foot before the date of the accident. Asked whether he hadn't told a Mr. Saunders of defendant company, some five months after the event, how the accident had happened  viz., "As I stood in a standing position I sort of lost my balance and attempted to grasp the door frame to prevent myself from falling."  plaintiff said he would not deny having made such a statement, *369 but just didn't remember it. He admitted having vaulted onto the loading platform in the same way thousands of times before.
Defendant admitted that it had not provided any steps to the platform. The evidence was that there was no ladder, handgrip, or other device in proximity to the platform to aid plaintiff in ascending to or descending from it. There was a door leading to the platform from the driveway side of the building; plaintiff had on prior occasions observed there was a desk and boxes on the inside which barred entrance, but he did not know whether the door was blocked on the day of the accident. There was a front entrance to the building about two blocks away, and an entrance on the railway side of the structure, around the corner from the platform. Plaintiff at first said he was not aware of the latter door, but on cross-examination he stated he guessed there was such a door.
There was testimony that it was impossible to reach the platform by walking from the tractor into and through the body of the trailer because there was no opening in the rear of the tractor cab for that purpose. However, the trailer had a side door opening to which one could ascend and then, by walking through the trailer, reach the platform against which the vehicle had been backed. Plaintiff had never used this method of reaching the platform.
Defendant offered no counter-statement of facts, explaining that plaintiff's statement appeared to set them out accurately enough in a light most favorable to his contention  that being the standard for review in judging whether the trial court had correctly granted the motion for dismissal. It is defendant's contention that viewed in accordance with that standard, none of the facts testified to, nor any of the reasonable and legitimate inferences flowing therefrom, presented a question for determination by the jury, either upon the issue of negligence or proximate cause, and accordingly the action of the trial court was correct. We agree.
An examination of the testimony fails to reveal any facts upon which a jury could predicate a finding that defendant *370 was negligent. We find no proof that defendant performed any act which a reasonably prudent person under similar circumstances would not have done, or that it failed to perform any duty which such a person under such circumstances would reasonably be obligated to do.
As has so often been observed:
"the mere showing of an accident causing the injuries sued upon is not alone sufficient to authorize an inference of negligence; negligence is a fact which must be shown; it will not be presumed. Indeed there is a presumption against it and the burden of proving the charge of negligence contained in the complaint is upon the plaintiff and must be sustained by proof of circumstances from which defendant's want of due care is a legitimate inference. It is a substantial right of defendant that plaintiff be required to bear this burden." Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 139-140 (1951).
Plaintiff did not sustain that burden. He failed to introduce any evidence that the construction of a platform 44 inches high without steps or a ladder was in any way a deviation from standard construction, or that it was unsafe. Cf. Feil v. West Jersey & Seashore R. Co., 77 N.J.L. 502, 504 (E. & A. 1909); Halm v. Board of Chosen Freeholders of Hudson County, 78 N.J.L. 712, 715 (E. & A. 1910); Seckler v. Pennsylvania R. Co., 113 N.J.L. 299, 301 (E. & A. 1934); Kelly v. Loft, Inc., 124 N.J.L. 185, 186 (E. & A. 1940). And even had it been shown that the loading platform was of substandard construction, recovery would have been possible only where "the structural defect was dangerous or there existed some factor which constituted negligence." Ball v. Atlantic City Ambassador Hotel Corp., 137 N.J.L. 744, 748 (E. & A. 1948), where the cases are collected and discussed; Kahn v. Werbel, 4 N.J. Super. 184, 186 (App. Div. 1949). Such is not the case here.
Plaintiff argues that defendant knew or should have known there was an appreciable probability that some harm would ultimately come to one in his position from the particular condition  the 44-inch height of the loading platform  and so defendant's conduct in maintaining that condition without steps, ladder or other device, was unreasonable and therefore *371 negligent. Swift & Co. v. Schuster, 192 F.2d 615 (10 Cir., 1951) is cited in support. The facts in that case are altogether different. There the plaintiff, a government inspector in defendant's slaughter house, slipped and fell on a wet, slippery and greasy floor while descending from a platform which was claimed to be too high. A divided court decided that a jury question was presented upon the issues of negligence, contributory negligence and assumption of risk. The result has been criticized, 65 Harv. L. Rev. 623, and it does not appear that the case has ever been followed.
Not only did plaintiff fail to establish negligence, but there was an absence of any proof of proximate cause. Plaintiff himself testified that he already had both feet on the platform before he fell. It is not claimed that the platform was wet or slippery, or that there was some foreign substance at the spot where plaintiff stepped, or that the platform was faultily constructed. We find no more proof of defendant's responsibility for the fall than there was in Trilling v. H.L. Green Co., 130 N.J.L. 36, 39 (Sup. Ct. 1943). See also Ball v. Atlantic City Ambassador Hotel Corp., 137 N.J.L. 744, 748 (E. & A. 1948).
Plaintiff also claims error by the trial court in striking out a question posed in the supplemental interrogatories whereby plaintiff sought to elicit from defendant whether prior to the date of the accident a truckman had claimed to have suffered personal injury through the use of a similar loading platform located at defendant's bakery on Queen Street, Newark. The question was stricken on defendant's motion. It may be observed that at the trial plaintiff made no offer to prove a similar incident at the Queen Street premises. Such evidence would have been incompetent and irrelevant insofar as the incident in question is concerned. See Temperance Hall, etc., v. Giles, 33 N.J.L. 260, 264 (Sup. Ct. 1869), where the court pointed out that it would not be competent for plaintiff to prove, as tending to show there was a nuisance, that at other times other persons fell into the excavation there in question. The principle thus established has consistently been followed to exclude proof *372 of the occurrence or absence of other accidents to establish or negative defendant's negligence. See, for example, Bobbink v. Erie R. Co., 75 N.J.L. 913, 915 (E. & A. 1908); O'Brien v. Staiger, 101 N.J.L. 526, 528 (E. & A. 1925); Crouse v. Stacy-Trent Co., 110 N.J.L. 124, 127 (E. & A. 1933); Schnoor v. Palisades Realty, etc., Co., 112 N.J.L. 506, 510 (E. & A. 1934); Leech v. Hudson & Manhattan R. Co., 113 N.J.L. 366, 370 (Sup. Ct. 1934), affirmed o.b. 115 N.J.L. 114 (E. & A. 1935); Newbury v. American Stores Co., 115 N.J.L. 604, 605 (E. & A. 1935); Schwartz v. Howard Savings Institution, 117 N.J.L. 180, 183 (E. & A. 1936); Jones v. Lahn, 1 N.J. 358, 361 (1949). The present case is stronger than the Temperance Hall case because here the inquiry was addressed to determining whether there had been a prior accident at other premises.
Plaintiff's theory is that a previous accident occurring at the Queen Street platform would impute knowledge of the dangerous character of the L Street platform, citing Alcott v. Public Service Corp., 78 N.J.L. 482 (E. & A. 1909), and Dolan v. Newark Iron & Metal Co., 18 N.J. Super. 450 (App. Div. 1952). The cases are not applicable in the instant circumstances.
There is no question here concerning defendant's notice or knowledge of the height of the platform from which plaintiff fell. There is no allegation that there was any existing condition upon the platform of which defendant had or should have had knowledge. Information about the possible occurrence of an accident at the Queen Street premises would be inadmissible in determining whether there was negligence in connection with the L Street platform. Nor would such information reasonably be calculated to discover relative evidence.
The judgment is affirmed.