THE HOBOKEN FERRY COMPANY, PLAINTIFF IN ERROR, v. JOSEPH FEISZT, DEFENDANT IN ERROR.

1. Ferry exits, for common use of foot passengers and for teams and vehicles, are places of obvious danger, and passage over them suggests and requires a prudent watchfulness against the danger attendant upon that use.

2. Where the facts show, beyond question, that a passenger was not observant of his surroundings, and paid no heed to his personal protection and safety, and that his own carelessness was the sole cause of his injury, he cannot recover.

On error to the Supreme Court.

For the plaintiff in error, *Besson, Stevens & Lewis.*

For the defendant in error, *W. H. & E. G. Davis.*

The opinion of the court was delivered by

LUDLOW, J.   The defendant in error, Mr. Feiszt, was a passenger on a ferry-boat of the Hoboken Ferry Company, plaintiff in error, March 29th, 1894, coming from New York city, and arrived at the Hoboken side about three o'clock in the afternoon.

He was a resident of Jersey City, living on the "Heights," and had often used the defendant's ferry to and from New York.

On the afternoon referred to, on his way out to the street, going over the usual ferry exit, he took the north-side passenger-way, alongside of the team or vehicle-way of the exit. This exit is of the ordinary style, widening out from the slip, fan-like, towards the street, with passenger-ways on each side of the teamway; which is elevated about three inches, and is about ten or twelve feet wide.

The passenger-way on the south side of the teamway is the most used, because it leads to the sidewalk, and passengers coming to the exit from the south side generally cross the teamway as quickly as they can, having an eye on passing teams or vehicles, and make for this sidewalk outlet of the exit. Passengers going for other points continue on the north side to the open street, as they choose.

On the occasion referred to, Mr. Feiszt left the north side of the boat and went towards the street, using the north-side way.   He continued on this way for some distance, until he reached a point about twelve or fifteen feet from the street opening, when, according to his own testimony, he heard the sound of an oncoming horse and wagon, and, without looking towards the boat to see where the wagon was, he turned quickly to the left and ran as fast as he could for the south-side gate or outlet of the exit.   The instant after his sudden change of course, and as he started across the teamway, the oncoming horse and wagon struck him, and must have been, at the time he started to cross, so near that, as he says, if he had walked instead of running, he would have walked against the horse.

This horse and wagon had . been ferried over with him on the same boat, and was in charge of a driver; the wagon was loaded and the horse was coming down the teamway on a fast walk or slow jog trot, and the sudden change of course of Mr. Feiszt was so precipitate that it was impossible to avoid the collision which took place almost at the moment after Mr. Feiszt's change of course.

At the time Mr. Feiszt changed his course he was in a place of safety, and if he had continued on his then way as he was going, he would have reached the street without hurt.

The evidence shows clearly and beyond question that Mr. Feiszt heard the sound of the oncoming horse and wagon, and that he did not look or pay any heed to their approach, but measuring their distance by the sound he made a sudden and rash movement to cross the teamway ahead of the horse, then directly on him.

The evidence in the case, from the testimony of bystanders who saw the occurrence, proves beyond dispute that the accident to Mr. Feiszt was the result of his own thoughtless, careless and apparently reckless conduct.

This suit was brought by Mr. Feiszt against the Hoboken Ferry Company and Wendel Samuel, the owner of the horse and wagon, to recover damages for the injury received on the occasion referred to. It was tried at the Hudson Circuit and resulted in a verdict against the Hoboken Ferry Company only, against whom judgment was had on *postea,* and who bring this writ of error. The other defendant (Samuel) was found not guilty.

At the trial, on the close of the plaintiff's case, motion was made by the defendants to nonsuit, because of plaintiff's failure to show negligence on part of defendants, and because the plaintiff's injury, if any, was the result of his own failure to exercise the ordinary care and prudence of a reasonably prudent man in his situation, and this motion was renewed at the close of all evidence, and in each instance such motion was refused by the court and exception sealed, and error is assigned thereon.

It is not necessary to consider any of the several assignments of error in this case, save those on the refusal of the court to nonsuit.

The facts do not point to any negligence on the part of the ferry company.

Ferry exits for common use of foot passengers and for teams and vehicles are places of obvious danger, and passage over them suggests and requires a prudent watchfulness against the dangers attendant upon that use. *Watson* v. *Camden and Atlantic Railroad Co.*, 26 *Vroom* 125; *Opinion of Chancellor, p.* 128.

The facts in this case show beyond question that Mr. Feiszt was not observant of his surroundings and paid no heed whatever to his personal protection or safety, and that his own carelessness was the sole cause of his hurt and of the collision from which it came.

The defendant's motion to nonsuit should have been granted. There was error in its refusal.

The judgment below must be reversed, that a *venire de novo* may issue.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Gummere, Ludlow, Magie, Van Syckel, Bogert, Brown, Krueger, Sims, Smith, Talman. 13.