FRANCES ANN KINGSLEY, PLAINTIFF IN ERROR, v. DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, DEFENDANT IN ERROR.

Argued November 26, 1910—Decided June 19, 1911.

1. Where the plaintiff, in attempting to alight from a railroad passenger coach, from which others had alighted before and after her, missed her footing and fell between the car step and platform of the station and was injured, the mere proof that other railroads constructed car steps and platforms of a different type, without any proof of the existence of a recognized standard type, will not charge the defendant with negligence.
2. The mere happening of an accident, without some proof of facts from which the violation of a duty due to the plaintiff by the defendant may be legitimately inferred, as a rule, will not constitute negligence.

---

On error to the Supreme Court.

For the plaintiff in error, *McDermott & Enright.*

For the defendant in error, *Max M. Stallman.*

The opinion of the court was delivered by

MINTURN, J. While attempting to leave the defendant's passenger coach in the terminal at Hoboken, the plaintiff, a lady over sixty years of age, misjudged the distance between the step of the car and the station platform, and, instead of placing her foot upon the platform, set it between the step and the platform, and, falling, sustained the injuries for which she claims damages in this suit.

With a party of three, consisting of her son, and Dr. Davidson and his wife, she boarded the train at Grove street station, a suburban station of Newark, and arrived at Hoboken at about twenty minutes before eight o'clock in the evening. The car in which she rode was filled with passengers, some of whom preceded her in their exit, while others followed her. The members of her own party preceded her, and, while she was in the act of alighting, Dr. Davidson, who immediately preceded her, turned to assist her, and found her wedged between the station platform and the car step.

The action is based upon the legal theory alleged in the declaration, that the defendant, in disregard of its duty, did not furnish a reasonably safe place in which to alight, and did not maintain its platform in such a manner as to be reasonably safe, and did not illuminate its platform in such a manner as to enable the plaintiff to safely alight. It will be observed, therefore, that the gravamen of the action is essentially the failure of proper construction of the defendant's transportation facilities and a failure of maintenance in the supply of light.

The plaintiff's testimony is the only evidence in the case directed to the latter allegation, and she leaves it entirely clear that there was a sufficiency of light, or, at least, that the absence of sufficient light was not the superinducing cause of her accident. Thus, the question was asked:

"*Q.* Well, it was lit; it (the depot) was illuminated?

"*A.* Certainly. Yes, indeed.

"*Q.* And did you notice that the lights were in the middle of the platform?

"*A*. I did not notice any lights. There was no light that °
was thrown down particularly on the steps."

It is a matter of conspicuous comment, in view of the
meagreness and want of evidential completeness of this tes-
timony, and of its vital importance to the plaintiff's case,
that, if the defective condition of the lights in the terminal
could to any extent account for this accident, not one of the
plaintiff's party, or one of the many passengers who occupied
the coach with her, was called upon to supplement and sup-
port the allegation.

The efforts of the learned counsel for the plaintiff were
directed in the main to establishing the negligence of the
defendant upon its alleged failure to construct its car steps
and platform in a reasonably safe manner for the plaintiff to
alight, and it was sought to establish that contention by two
methods of proof:

*First.* By the testimony of an engineer and a lawyer who
had made measurements of other cars in the terminals of
other railroads, and *secondly,* by photographs taken by a pho-
tographer shortly before the trial, at the defendant's terminal.

The case is before us upon exceptions taken by counsel for
the plaintiff to the exclusion of questions put to those wit-
nesses, and in two instances to the exclusion of photographs
as well as generally to the direction of a nonsuit by the trial
court at the termination of the plaintiff's case.

The plaintiff sought to prove, by her witness Higgins, a
civil engineer in the employ of general railroad contractors,
that there was a difference in measurement between the steps
on cars operated by other companies, and the steps of this
particular car, with relation to the depot platform. Having
proved not only that there was a difference, but also that the
cars of the various lines selected for comparison varied with
one another, and that there was not in use by any company
what may be called a standardization of step or a generally
accepted type of platform which could be utilized as a basis
for comparison, he was asked:

"What, in your opinion as a civil engineer, is the proper
distance to space a landing platform from the gauge rail of

a track, with a view to all conditions of railroad traffic as you have become familiar with them?"

The trial court overruled this inquiry, and we think properly. The net result of this witness's testimony was that he had never constructed a railroad platform or roadbeds, with a view to the accommodation of railroad traffic in a railroad terminal. His experience was limited to employment with railroad contractors, and a more or less extensive familiarity with opinions based upon writing and views on railroad construction, which he had gleaned from a book and some periodicals dealing with that subject. His was not the case of a competent constructive railroad engineer whose testimony in behalf of a theory of construction could be supported by constructive engineering work accomplished or directed by himself, the general principles underlying which had received the approval of recognized experts or text-writers of his craft whose works he might invoke to support his theory. No such responsibility had been thrust upon him, and he was practically in the *status* of a civil engineer who had read some theories upon the subject of railroad construction in books and magazines, which *non constat* ever were put into actual practice. That the book itself would not be evidence except for the purpose of contradicting the witness, is the settled law of this state. *New Jersey Zinc Co.* v. *Lehigh Zinc Co.*, 30 *Vroom* 189.

And, *a fortiori*, the interpretation put by a witness upon the language contained in the book, as the sole ground for his qualification as an expert, must be equally apparent. As was said by Mr. Justice Dixon, speaking for this court, in *Laing* v. *United New Jersey Railroad Co.*, 25 *Vroom* 578: "The worthlessness of such testimony is hardly a stronger reason for its rejection than the practically limitless amount of it that might be produced." See, also, *State* v. *Maioni*, 49 *Id.* 339.

The witness had demonstrated by measurements taken by him in different railroad terminals that no two railroads agreed in the method or form of car step and platform construction, and that the entire method or form of construction apparently was a question of the adaptation of the platform

of the stations to the various types of rolling stock which the companies found it necessary to accommodate in their terminals, in an enormous interlocking system of transcontinental travel and commerce. That, under such circumstances, there may be differences of construction, must be apparent, even with the same railroad, but that difference of construction does not prove negligent construction, must be equally clear; and, therefore, the testimony of a witness based entirely upon the former theory, and in the absence of a single factor evidencing negligence of construction, was properly rejected.

The photographer presented four photographs showing conditions at the terminal shortly before the trial. Two of these were excluded, and we think properly, because, in reality, they did not purport to show conditions, but included superadded elements intended to demonstrate for evidential purposes the theory of the plaintiff's case.

The principle upon which photographs are admitted is entirely foreign to such a theory, for their utility, as evidence, is based upon the assumption that they present as nearly as can be done a fac-simile representation of the place in question. *Dyson* v. *N. Y. & N. E. R. R.*, 57 *Conn.* 9; *Goldsboro* v. *Central Railroad*, 31 *Vroom* 49.

The general question of the defendant's liability, under the circumstances, is presented by the exception taken to the direction of a nonsuit.

As has been observed, there was in the testimony proof conclusive to show that there was not in actual practice of railroad operation any method of construction of car steps or terminal platforms recognizing any standardization of type from which it could be said that the defendant in varying its construction from a recognized standard or type had violated the duty of observing care and foresight for harm which it owed to this plaintiff. Upon the principle of the violation of a duty to take reasonable care and foresight of harm, rests the entire doctrine of tort-feasance. "A person," said Lord Esher, in *Lane* v. *Cox*, 1 *Q. B.* (1897) 415, "cannot be held liable for negligence unless he owed some duty to the plaintiff and that duty was neglected."

A violation of this duty, which we call negligence, cannot be presumed, but must be proved. *Ad. Torts* 36.

As was said by Mr. Justice Blackburn in *Mersey Docks* v. *Gibbs, L. R.,* 1 *H. L.* 93, 115: "The liability for an omission to do something depends entirely on the extent to which a duty is imposed to cause that thing to be done."

And so it cannot be predicated of any particular act that it is *per se* negligence; it is only so because it is a breach of some duty which must appear as a substantive factor in the case. *Sm. Neg.* 2; *Kahl* v. *Love,* 8 *Vroom* 5.

If there was a duty imposed upon the defendant in this case, other than it had performed in the carriage and care of the plaintiff, the testimony does not present it, except upon the theory that this intervening space between platform and car step presented an obvious danger which the defendant should have guarded against in some manner. It may be said in passing that if this space presented a condition of danger which was obvious to the defendant to a degree requiring the exercise of care in its use and to superinduce a duty of care and foresight, it was equally obvious to the plaintiff, and, under such conditions, it has been held by this court that exits for common use for foot passengers are places of obvious danger, and that passing over them suggests and requires a prudent watchfulness by the user against the danger attendant upon their use. *Hoboken Ferry Co.* v. *Feiszt,* 29 *Vroom* 198.

That the existence of this space did not impress itself as a place of danger upon the plaintiff's friends, including her son, who preceded her in alighting, is manifest, for none of them warned her of its existence, and all of them alighted without comment or precaution regarding a possible danger to the plaintiff in its use. Dr. Davidson alone, recognizing the courtesy which the occasion demanded, turned to give the plaintiff his hand in alighting, and then found her between the car step and the platform. Out of a car filled with passengers, as the plaintiff testified, none has been produced to testify to the inherent or obvious danger incident to alighting therefrom, or that any other accident took place at that time

or at any other period in the attempt to use this step and platform construction.

The argument for negligence by the defendant, therefore, must proceed upon *ad hominem* lines, and not upon notice to the defendant from the happening of a previous accident or from the clear obviousness of danger incident to the maintenance of a dangerous condition.

In this aspect of the question we are not without illumination from this and other jurisdictions.

In *Readhead* v. *Midland Railway Co., L. R.,* 2 *Q. B.* 412, 441, Justice Blackburn, upon a question of kindred character to that presented here, said: "I agree with what I understand to have been the direction of Chief Justice Erle in *Ford* v. *London and S. W. Railway Co.,* 2 *F. & F.* 730, that the railway company are not bound to have a carriage made in the best of all possible ways, but fulfilled their duty by providing a carriage such as was found in practical use to be sufficient. In other words, I understand the obligation to be to furnish not a perfect vehicle but one reasonably sufficient."

In *Traphagen* v. *Erie Railroad,* 44 *Vroom* 759, the plaintiff was injured in alighting from a passenger coach of the railroad company by her heel catching on the step. The negligence alleged was the inordinate height of the step from the ground, and it was there held by this court that while a railroad must use reasonable means to enable a passenger to alight, it is not held to an exercise of infallible judgment in its method of construction. Mr. Justice Swayze, speaking for this court, said: "If we may be presumed to know that the height (of steps) of some cars are lower, we may also be presumed to know that the height varies with different railroads, with different cars upon the same road, and even with different cars of the same train. No standard of height is shown to have been adopted and the managers of each railroad apparently use their own judgment. That judgment varies doubtless on account of the different problems with which each road has to contend. Whether the height of the step be high or low, accidents will happen that might be avoided in each particular case if the height were different."

The case of *Laflin* v. *Buffalo and Southwestern Railroad Co.,* 106 *N. Y.* 136, is there cited with approval, and it is to be observed that the latter case differs from the former in the fact that while in the New Jersey case the ground of action was that the step was too high, in the New York case the complaint was that it was too low. Mr. Justice Earl, in his opinion, remarks: "There was no proof that the platform was not constructed in the ordinary way; nor that the space between it and the car was any greater than the emergencies of the business and the operations of the railroad required. There was no evidence that any accident had ever happened at that station before on account of the construction of the platform, or that there had ever been any complaint in reference to it. No structure is ever so made that it may not be made safer. But, as a general rule, when an appliance or machine or structure, not obviously dangerous, has been in daily use for years and had uniformly proved adequate and safe and convenient, its use may be continued without the imputation of culpable imprudence or negligence." In further support of this rule it was held by the same court to be error to allow the plaintiff to prove the happening of accidents at other stations on the same railroad, without showing that the conditions were substantially similar. *Brady* v. *Manhattan Railway Co.,* 127 *Id.* 86.

And in line with the principle thus enunciated, it was held in the same jurisdiction that the owner of a vehicle is not bound to furnish appliances which will render an accident impossible, but only such as are commonly used by men of judgment and common prudence. *Rattagliata* v. *Hubbell,* 7 *Misc.* (*N. Y.*) 103.

In the case last cited, many instances of the application of this rule are cited.

To the like import are the Massachusetts cases.

*Hilborn* v. *Boston & N. St. Ry. Co.,* 191 *Mass.* 14, is the latest and most conspicuous instance at hand, and its facts are essentially akin to those in the case at bar. Mr. Justice Sheldon remarked: "In the absence of any evidence, it was mere matter of speculation whether widely differently con-

structed cars practically could have been used in the different places and under the different circumstances necessary to be provided for."

In the case at bar, the space complained of as dangerous was between seven and a half to nine and a half inches; in *Falkins* v. *Boston Elevated Railway, 188 Mass.* 153, the width of the space between platform and car step was from seven and a quarter to ten and a half inches; in *Willworth* v. *Boston Elevated Railway, Id.* 220, and in *Field* v. *Boston Elevated Railway, Id.* 222, the space was between three and four inches; in *Ryan* v. *Manhattan Railway Co., 121 N. Y.* 126, the estimate was fourteen or fifteen inches; in *Fox* v. *New York, 70 Hun* 181, the width was twenty inches; in *Rothchild* v. *Central Railroad, 163 Pa. St.* 49, the estimate was sixteen to eighteen inches.

"In all these cases," says Mr. Justice Sheldon, in the case of *Hilborn* v. *Boston & N. Ry., ubi supra,* "it was held that the existence of the space offered no evidence of negligence."

User of the defective appliance for a time sufficiently long to enable a court to leave it to a jury to presume notice from the duration of the defect, or actual notice to the defendant of the defective condition in the case of a stairway in a *quasi* public place, such as a large department store, was held by this court, in the recent case of *Schnatterer* v. *Bamberger, post p.* 558, to be the essential prerequisites to establishing the liability of the defendant for injuries suffered by a customer who caught her heel in the brass nosing while using the stairway.

The case at bar, however, is devoid of even these elements of liability, and no attempt is made to establish defendant's liability upon the ground of notice, or presumptive notice, but solely upon the ground that because of the happening of the injury to the plaintiff, *ex necessitate* a mode of car construction which up to that period, and presumably since, has stood the test of use and experience, may be singled out and condemned as a species of malconstruction, upon a basis of comparison which, in the same breath, admits that there is no

recognized standard of comparison, and hence no basis for the condemnation of the defendant as a tort-feasor.

In the final analysis, the testimony in the case at bar demonstrates simply a difference of construction between the defendant's car and platform and some of the cars and platforms of other companies; but, upon legal principle, until that difference can be transmuted into a legal generalization indicating a variation from the existence of a standard type, the departure from which by the defendant might be construed as imprudent and negligent, and by which a criterion of duty may be established, the damage incurred under circumstances such as are presented in the case at bar must be held to be *damnum sine injuria* and can impose no liability upon the defendant.

The judgment below is therefore affirmed.

GARRISON, J. (dissenting). The open space between the car step and the station platform, into which the plaintiff stepped on leaving the car, was due to the fact that the defendant was operating its road with passenger coaches of different widths, from which it resulted that the space between the car step and the station platform varied according to the width of the cars. The fact that the plaintiff actually stepped into a space so left was not only some proof of its existence and size, but also that it endangered the safety of those to whom the defendant owed a high degree of care in the operation of its road. It is wholly a question of care in the operation of a railroad.

The doctrine of immunity in matters of construction has nothing to do with the case. The right of the defendant to construct its coaches and its platforms as it pleases may be conceded to the fullest extent; when, however, it comes to the question of operating a railroad for the carrying of passengers with the means provided by the company, no matter how or by whom constructed, such operation must be conducted with a high degree of care with respect to which no doctrine of immunity finds any foothold. Apart from such doctrine the present case turned solely upon questions of fact that

should have been submitted to the jury under established principles of law. I therefore vote to reverse the judgment of nonsuit.

*For affirmance*—THE CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, VOORHEES, MINTURN, VREDENBURGH, JJ. 7.

*For reversal*—THE CHANCELLOR, GARRISON, BOGERT, VROOM, CONGDON, JJ. 5.