TIMOTHY BYRON, PLAINTIFF-APPELLANT, v. PUBLIC SERVICE CO-ORDINATED TRANSPORT, A BODY CORPORATE, KROEHLER MANUFACTURING CO., INC., LIKEWISE A BODY CORPORATE, AND MELVIN ALLEN, DEFENDANTS-RESPONDENTS.

Argued October 5, 1938—Decided April 10, 1939.

452

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the appellant, *Lum, Tamblyn & Fairlie* (*James Raymond Berry,* of counsel).

For the respondent Public Service Co-ordinated Transport, *Henry H. Fryling* (*James O. Boyd* and *William H. Speer,* of counsel).

For the respondents Kroehler Manufacturing Co., Inc., and Melvin Allen, *Foley & Francis* (*John J. Francis,* of counsel).

The opinion of the court was delivered by

HEHER, J. This is an action in tort for negligence. The trial judge granted a nonsuit as to all three defendants; and the primary question at issue is the propriety of that ruling.

On May 12th, 1936, the plaintiff, Byron, was a passenger on a trolley car of the Public Service Co-ordinated Transport, moving west on Market street, in the city of Newark. He was seated on the right-hand side of the vehicle, with his right arm resting on the windowsill. It was a warm day, and the window was open. He concedes that his elbow extended about two and a half inches "outside the window." While so situated, a motor truck of the Kroehler Manufacturing Co., Inc., driven by Allen, proceeding in the same direction,

came into contact with the protruding elbow and inflicted injuries for which recovery is sought in this action. The truck was ten feet eight inches high and eight feet wide. Metal "spools" or "buttons," designed to hold the tailboard tie rope, jutted out from either rear side of the body.

*First:* It was reasonably inferable from the evidence that, while the trolley car was moving slowly between Broad and Halsey streets—"inching along, trying to get ahead," in "heavy traffic," was Byron's description of its movement—the Kroehler Company's truck, advancing at a greater rate of movement, was driven so close to the trolley car as to collide with Byron's projecting elbow; and under all the circumstances it was the jury's province, in a special and peculiar sense, to determine whether the mishap so suffered by Byron was within the realm of reasonable prevision as regards the operator of the truck—one that the exercise of due care for Byron's safety would have obviated. Byron himself testified that his arm had been in this identical position on the car windowsill from the time he took his seat immediately upon boarding the car, several blocks east, until struck by the truck.

It was incumbent upon the truck operator to employ such care for the safety of other users of the highway as a reasonably prudent person would have exercised under like circumstances, and this of necessity implies observation of the roadway effective to a discharge of that duty. It was for the jury to determine whether the non-observance of this obligation was the proximate cause of the injuries.

And there was no tangible basis in the evidence for the inference, proposed as justifiable by counsel for the Kroehler Company and its co-defendant Allen, that the trolley car, proceeding at a greater rate of motion, was passing the truck when the collision occurred. True, Byron testified that he "could not tell" whether the truck was in motion at the time he "felt the pain;" but this does not in and of itself support the hypothesis thus tendered by these defendants. Byron's testimony that, when struck, his "arm went * * * forward," and that he was "pulled * * * forward," plus that relating to his observations immediately before, affords

a rational basis for the conclusion that the truck was passing the trolley car when the collision took place. It was for the jury to assay this evidence. *Sivak* v. *New Brunswick*, 122 *N. J. L.* 197.

The law does not brand as negligence *per se* the extension of an arm beyond the car windowsill thus admitted by Byron. Such is not a breach of an absolute duty that under any and all circumstances is denominated negligence. Whether it should be so termed in the particular circumstances is ordinarily a question for the triers of the facts. *Thibodeau* v. *Hamley*, 95 *N. J. L.* 180. See, also, *Gavin* v. *Cohn & Slotnick*, 5 *N. J. Mis. R.* 296.

And so it was error to enter a nonsuit as to these defendants.

*Second:* But, as regards the Public Service Company, the judgment of nonsuit is free from infirmity.

While the complaint averred, *inter alia,* that the trolley car was negligently "driven * * * with great force and violence into and against" the Kroehler Company's truck, it is now maintained that the negligence disclosed by the evidence consisted of the operation of the trolley car "with no reflecting mirror, by a motorman who did not make any observations to the rear," with "a guard rail over the windows only on the left-hand side as one faced the front, and not on the right-hand side."

The argument is made that it was the duty of the Public Service Company, "as a common carrier, to exercise a high degree of care to protect its passengers from every danger that the exercise of reasonable foresight would anticipate;" and that the essential inquiry is whether "this accident was one, the characteristics of which could be classified among events which sooner or later, in the absence of due care, were likely to happen"—citing *Hansen* v. *North Jersey Street Railway Co.,* 64 *N. J. L.* 686, 699.

But the motorman was under no duty to anticipate that any "part of the person of the passenger would protrude beyond the lines of the car." *Zeliff* v. *North Jersey Street Railway Co.,* 69 *N. J. L.* 541. Such being the case, there was no obligation on the carrier to equip the car with a mirror that would give the operator a view of that side of the car,

assuming it to be a practical device for the purpose indicated. "Changed traffic conditions, changed car construction," and so on, do not, as suggested by appellant, call for "a different rule." It is a primary duty of the operator of a moving vehicle to observe traffic ahead, pedestrian and vehicular, and the constant vigil to the rear implicit in the performance of the duty thus claimed to rest upon the common carrier would of necessity substantially interfere with the discharge of that obligation.

Moreover, there was no evidence tending to show that this trolley car, as respects the lack of such a mirror and window guards on the right-hand side thereof, differed in character from those in common use under like circumstances. There was nothing to show that it was not of standard construction. The fact that there were window guards on the left side is of no significance as regards this particular inquiry when it is considered that the carrier also operated cars on a parallel track, and that there were hazards to passengers incident to the passing of cars on the adjoining track, particularly at curves, that these guards were designed to obviate.

The onus was upon Byron to establish by evidence that the car construction in the respects complained of was not in conformity with the common standard governing well regulated common carriers employing like means of transportation. There must be proof of a breach of the duty thus owing to the passenger. The carrier is not an insurer of his safety. The case is obviously not one of a negligent performance of an assumed duty of protection—"of furnishing guard rails on trolley cars," as alleged in the amended complaint.

*Third:* And we find no error in the striking out of the following interogatories propounded by Byron to the Public Service Company:

"10. Answering 'yes' or 'no,' did this defendant operate trolley cars on or about May 12th, 1936, which had guard-rails over windows both on the hight-hand and left-hand side?

"11. If the answer to No. 10 is 'yes,' how many trolley cars of this defendant on May 12th, 1936, were equipped with guard-rails on both right and left-hand sides?"

Section 140 of the Practice Act of 1903 (3 *Comp. Stat., p.* 4097; *R. S.* 1937, 2:27-165, *et seq.*) requires "strictly responsive" answers to interrogatories, and provides that the answer shall be evidence in the action if offered by the party proposing the interrogatory. And so a categorical affirmative answer to interrogatory No. 10, in accordance with the demand thereof, followed by a strictly responsive answer to the eleventh interrogatory, would plainly prejudice the substantial rights of this defendant, for these interrogatories did not take into account the circumstances attending the operation of trolley cars equipped with window guards on both sides. For instance, "double end" trolley cars, *i. e.,* capable of operation from either end, might quite conceivably have window guards on both sides without relation to the giving of such protection to passengers situated as Byron was in the instant case.

Moreover, the tenth interrogatory was so loosely worded with respect to time as to call for an affirmative answer if cars so equipped had been operated subsequent to the happening of Byron's injury.

In these circumstances, the trial judge justly exercised the power conferred by section 140 of the Practice Act, *supra,* to strike out interrogatories for "good cause."

The judgment is accordingly reversed as to Kroehler Manufacturing Co., Inc., and its co-defendant, Allen, and a *venire de novo* awarded; costs to abide the event. It is affirmed, with costs, as to the Public Service Co-ordinated Transport.