## WILLIAMS v. NEW JERSEY–NEW YORK TRANSIT CO.

### No. 359.

Circuit Court of Appeals, Second Circuit.
July 18, 1940.

Kaye, Scholer, Fierman & Hays, of New York City (James S. Hays and Milton Kunen, both of New York City, of counsel), for appellant.

Breed, Abbott & Morgan, of New York City (Charles H. Tuttle, Thornton Land, Stoddard B. Colby, all of New York City, of counsel), for appellee.

Before L. HAND, CHASE, and PATTERSON, Circuit Judges.

L. HAND, Circuit Judge.

Defendant appeals from a judgment for the plaintiff awarding her damages for personal injuries, suffered while she was a passenger in the defendant's bus. She boarded the bus at Union City, New Jersey, and sat down in the second seat on the right-hand side of the aisle; a fellow passenger was beside her, nearer the window. Shortly after she was seated, he arose from his seat and put a brief case, which he had been holding in his lap, in the baggage rack overhead. After the bus had gone about a mile, this fell down and struck the

plaintiff on the right side of her head, causing the injuries for which she sued. The bus had been swerving and twisting so violently that the plaintiff had been several times thrown against her fellow passenger; and a jury might properly have found that this caused the brief case to fall. The rack was made of a row of eight metal bars, half an inch thick, spaced two and one-half inches apart, running lengthwise of the bus, and together making a substantially horizontal shelf extending from the side of the bus inwards towards the aisle. At the inner edge of this shelf was a similar bar, raised above the level of the rest, and between this bar and the inmost of the eight bars was a space of three and one-quarter inches. The rack was supported from the roof by metal struts at its inner edge, which was at a point above the middle of the seat that the plaintiff occupied. At the conclusion the defendant moved for a directed verdict, which the court denied; the sole question of fact which he submitted to the jury was whether it was negligent for the defendant to maintain a baggage rack "in the condition which has been described during the testimony."

Both sides agree that the law of New Jersey measured the defendant's liability, and it is apparent—although the plaintiff disputes it—that the judge was right in leaving nothing to the jury but the construction of the rack. Since, as we have said, the accident happened when the bus had gone only a mile beyond the place where the plaintiff boarded it, even though the other passenger had put the brief case in the rack shortly after she had sat down, the interval was not long enough to charge the defendant with notice that it was stowed negligently, if in fact it was. There was no evidence that the driver actually saw it; nor was the evidence material that the bus swayed violently as it rounded the curves. The plaintiff did not indeed request any addition to the judge's charge. If therefore the plaintiff did not prove that the rack was negligently made, she could not recover. Neither side proved whether there was any standard for the construction of such racks among bus companies. It is true that the defendant offered a certificate that the bus had been inspected by the New York Transit Commission, and conceivably some inference might have been permissible from that that there was a standard to which the rack did not fail to come up; but we could not dismiss the complaint, as we are do-

ing, if the defendant had the duty of proving that a standard for such racks existed; at most we should have to remand the cause for another trial because of the supposedly erroneous exclusion of the certificate. We proceed to an analysis of the New Jersey cases which in our judgment demanded the dismissal of the complaint.

In Traphagen v. Erie Railroad, 73 N.J.L. 759, 64 A. 1072, 1073, 67 A. 753, 9 Ann.Cas. 964, the passenger had caught her heel in the step of a railway car while getting off, and complained that the step was too high. Upon this issue she asked to go to the jury; but the Court of Errors and Appeals said no; because it appeared that there was no accepted standard for the height of steps on railway cars, the proper height of the step must be left to the managers of the roads. Apparently the carrier had there proved— or at least the court so took it—that there was no such standard; for that reason "to permit such a finding would practically substitute the judgment of a jury for the judgment of the railroad managers". We cannot read this in any other sense than that when it affirmatively appears that there is no standard, the jury has no power to set one. In Feil v. West Jersey & Seashore Railroad Company, 77 N.J.L. 502, 72 A. 362, 363, there was a depression of some eight or ten inches in a platform running between two tracks, put there to make easy the transfer of freight from one track to the other. The passenger, crossing this platform from a train upon one track to a train on the other and not observing the depression, stumbled and was hurt. Again, the Court of Errors and Appeals held that because the standard of care demanded was only that of ordinary persons similarly situated, "the adoption of a method of platform construction which accords with that in general use by well-regulated railroad companies, and which is approved by experience" is enough. That might be thought to leave open whether the carrier must not prove that there is a standard to which it does conform; but we do not so understand the ruling. Gummere, C.J., went on to say that there was nothing to support the conclusion that the railroad had failed to conform to any such standard, since there was no proof that the platform diverged "from platforms in general use by * * * other railroad companies". It was the passenger who must prove the standard. Possibly the court did not mean to cover equipment extremely and patently negligent, though we must own that there

is little in the opinion to support even such a limitation; be that as it may, ordinarily at any rate a court should not "leave railroad companies to the mere caprice of juries". In Kingsley v. Delaware, Lackawanna & Western Railroad, 81 N.J.L. 536, 80 A. 327, 35 L.R.A.,N.S., 338, the passenger was hurt by stepping into a space of between seven and a half and nine and a half inches between the car step and the station platform. It was proved that there was no standard interval, the practice of different roads varying, and again the Court of Errors and Appeals thought that the nonsuit below was right, because the evidence did not justify the inference that the interval was "a variation from the existence of a standard type" (81 N.J.L. page 545, 80 A. 330, 35 L.R.A.,N.S., 338). In both this case and Traphagen v. Erie R. R., supra, 73 N.J.L. 759, 64 A. 1072, 67 A. 753, 9 Ann. Cas. 964, the court laid some stress upon Lafflin v. Buffalo & Southwestern R. R., 106 N.Y. 136, 12 N.E. 599, 60 Am.Rep. 433, in which the passenger complained of the space between the car step and the platform and a judgment in her favor was reversed. The court's reasons there were that it had not been proved "that the platform was not constructed in the ordinary way, nor that the space * * * was any greater than the exigencies of the business and the operations of the railroad required" (106 N.Y. page 139, 12 N.E. page 600, 60 Am. Rep. 599). In Leech v. Hudson & Manhattan Railway Co., 1934, 113 N.J.L. 366, 174 A. 537, 538, affirmed by the Court of Errors and Appeals on the opinion below, 115 N.J.L. 114, 178 A. 754, the passenger fell while going down the staircase of a railway station, and the question was whether it had been properly made. She was allowed to recover, but only because the evidence "tended to indicate" that there was a "standard of construction" to which the staircase did not conform, or at least that the construction was "unusual", and never before known to the architects who testified. That was the reason given for not following the rule in Traphagen v. Erie R. R., supra, 73 N.J.L. 759, 64 A. 1072, 67 A. 753, 9 Ann.Cas. 964, and Kingsley v. Delaware, Lackawanna & Western R. R., supra, 81 N.J.L. 536, 80 A. 327, 35 L.R.A., N.S., 338; and the case was an application of that rule.

These are the only decisions of the highest court of New Jersey that we have found, but the Supreme Court has since 1934 twice passed upon the point. In Byron v. Public Service Co-Ordinated Transport, 122 N.J.L. 451, 5 A.2d 483, 486, the passenger had let his arm stick out from a trolley car and complained that the carrier had not installed a mirror in the front of the car from which the driver could have looked behind him and seen the passenger's danger. The court dismissed this contention because there was no evidence in the case that the car "was not of standard construction." Though it did not cite the cases in the Court of Errors and Appeals, we cannot suppose that it did not have them in mind. Finally, in Hansbury v. Hudson & Manhattan Railway Co., 1940, 124 N.J.L. 502, 13 A.2d 216, the court had before it a situation substantially identical with that in Kingsley v. Delaware, Lackawanna & Western R. R., supra, 81 N.J.L. 536, 80 A. 327, 35 L.R.A.,N.S., 338; the passenger stepped into a space of thirteen inches between the car and the platform. She argued that later cases had overruled the doctrine of the earlier decisions, but the court concluded that this was not true and affirmed a nonsuit. None of the decisions on which the passenger there relied as overruling the earlier cases have any bearing upon the situation, except Gore v. Delaware, Lackawanna & Western R. R., 89 N.J.L. 224, 98 A. 389. In that case the passenger complained not only of the height of the car step, but of the fact that she had to get off at a distance from the proper place in the night and without lights; and, although the Court of Errors and Appeals did not mention its three earlier decisions which we have described, it is evident that they were in its mind, and that it meant not to impair their authority.

From these decisions we do not see how we can avoid concluding that in New Jersey a passenger in order to recover because of a defect in the equipment of a common carrier—though not because of a defect in its operation—must show that the carrier diverged from some standard which has been in general use in equipment of the kind or at least that the construction is unusual. When the evidence leaves both issues at large, the carrier apparently may provide what it thinks best, and a jury is not allowed to fix another standard. We doubt that the New Jersey courts mean to hold that no defect whatever in equipment—however patently dangerous—must be condoned when no standard exists for that kind of device; but we cannot understand what the decisions hold at all, unless it be that, except possibly in such extreme cases,

a jury is not to set the standard for railway construction. Today, when public utilities are generally regulated by commissions of one sort or another, this may very well be a desirable rule; in any event it is not for us to change it. Plainly the rack in this case was not so obviously dangerous as to be within the exception if there is one, and the plaintiff failed to make out a case.

Judgment reversed; complaint dismissed under Rule 50 (b), 28 U.S.C.A. following section 723c.