## DR. MARTIN PALEY
*vs.*
## TRUSTEES OF THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD CO.

Superior Court    Fairfield County    File No. 63433

MEMORANDUM FILED MAY 26, 1942.

*Friedman & Friedman,* of Bridgeport, for the Plaintiff.

*Edwin Hall,* and *James Grady,* of New Haven, for the Defendants.

Memorandum of decision on motion to set verdict aside.

O'SULLIVAN, J. The plaintiff was injured while riding as a passenger on one of the defendants' trains as it was in the process of slowing down to stop at the Stamford station. While in the act of getting up from his seat, he found his foot caught in the footrail and in trying to liberate it he lost his balance and fell across the aisle, striking his elbow against a metal part of the opposite seat, which caused a small piece of bone to be chipped from the olecranon process.

The negligence on which the plaintiff relied, although expressed in various ways, was conceded by his counsel to fall within four specifications. These were:

1. That the train came to a sudden and violent stop;

2. That the footrail was defective;

3. That the defendants had failed to inspect the defective footrail;

4. And that a combination of the three foregoing specifi-cations established negligent conduct on the part of the defendants.

The last specification, of course, may be eliminated from consideration if none of the other three were established. And as to the third, that too may be ignored unless the second was proven, for, if the footrail was sufficiently safe to meet the degree of care required of the defendants, a failure to in-spect, even if deemed negligent, could not possibly have been the proximate cause of the plaintiff's accident.

This leaves for consideration the first two specifications, which actually cover the real claims of negligence. The first is that the train came to a sudden and violent stop. From a strictly technical angle, this was not established because all the testimony on the subject ran to the effect that the train was still in motion when the mishap occurred. But such a strict position, it seems to me, should not be entertained. After all, what the plaintiff was endeavoring to allege was that there was a sudden and violent jolt in the movement of the train from which one might infer negligence.

But to permit this inference, something more is necessary than proof of a jolt. Every one knows that no train can be operated without a certain amount of jolting, jarring and lurching. It is an incident of railroad travel. The differ-ence between a jolt that is the normal incident of travel and those that are so much more abrupt and unusual as to give rise to an inference of negligence is a difference of degree. *Rosenthal vs. New York, N. H. & H. R. Co.*, 88 Conn. 65, 67. However, there must be some proof to support the inference.

The transcript is barren of any testimony characterizing by descriptive language the type of jolt of which the plaintiff complained. The most that any witness said (and the sole witnesses on the matter were the plaintiff and his companion) was that there was a jolt or lurch. In this respect, the present case is vastly different from those where the jolt was described as "an awful jar", "threw me forward", "gave us a very big jar, I never saw anything like it." *Rosenthal vs. New York, N. H. & H. R. Co., supra.*

In addition to the oral testimony, the only other available evidence claimed to indicate an unusual jolt was the physical

fact of the plaintiff's fall. Such an element is proper to consider.

The circumstances surrounding the fall were described by the plaintiff in the following manner: "I put my left foot to the aisle, put my hand on the back of the seat in front because the seat was approximately about the level of my eyes and pulled myself up and turned in order to go back, and, when I did that, I found my right foot was hooked between the—my foot was on the foot rest but my toe was underneath the seat where there is some sort of machinery—mechanism—and I stood up and turned around and this foot was caught, so I tried to pull it, and it was wedged, so I began to slide it and finally freed the foot and, at the same time, I fell in the aisle and struck the other seat with my arm."

There was no evidence that any other passenger was discommoded or lurched about, although at the time the jolt occurred, at least six persons were standing in the aisle adjacent to the plaintiff's seat. Indeed, the plaintiff stated that while he thought a jolt had occurred, it had nothing to do with his fall. It is true, of course, that this opinion of his would not preclude him from asserting that a jolt contributed to his fall. *Kanopka vs. Kanopka*, 113 Conn. 30. But the burden still was his to prove through others that the jolt was of such a type that might reasonably indicate negligence.

But from all of the evidence and from all reasonable and permissible inferences, the most that the jury could reasonably have concluded as to the jolt was that it was severe enough to throw off balance a man standing on his left foot who was attempting to arise and turn around, while his right foot was still caught in the footrail. High as is the care required of a carrier, it goes to no such extreme as to demand the elimination of jolts of sufficient intensity to throw off balance one standing in an acrobatic position. Hence, it follows that the jury could not reasonably have determined that the first specification of negligence was established.

The other specification which demands attention is that the footrail was defective. Here again, the only testimony as to its condition, save that offered by the defendants, came from the plaintiff.

"Q—Dr. Paley, there was nothing defective or wrong—

defective about the condition of the foot rest or seat, was there?  A—No, sir."

The defendants offered evidence that the footrail was of modern and standard construction and was of the type in use on such railroad systems as the Chicago & Northwestern, Southern Pacific, Union Pacific, Northern Pacific, Pennsylvania, Delaware & Hudson, Santa Fe, Burlington, Grand Trunk, Canadian Pacific and Canadian National.  This evidence was not controverted nor was the witness who testified to this effect cross-examined by even a single question on the subject.

If the jury accepted this evidence—and no reason can be advanced why they should not have done so—it would indicate that these defendants had provided passage for the plaintiff in a relatively new coach whose seats were equipped with footrails of the most approved type in general use by those engaged in similar lines of activities.  Under such circumstances, it is difficult to see how the reasonable mind could classify as negligent the use of the footrail in question.  *Werbowlsky vs. Fort Wayne & Elmwood Ry. Co.*, 86 Mich. 236, 48 N.W. 1097; *Crowe vs. Michigan Central R. Co.*, 142 Mich. 692, 106 N.W. 395; *Adduci vs. Boston Elevated Ry. Co.*, 215 Mass. 336, 102 N.E. 315; *Perkins vs. Bay State Street Ry. Co.*, 223 Mass. 235, 111 N.E. 717; *Byron vs. Public Service Co-ordinated Transport*, 122 N.J.L. 451, 5 Atl. (2d) 483.

The burden of proving negligence rested on the plaintiff.  This burden was not met by establishing that an accident had occurred.  *Perkins vs. Bay State Street Ry. Co., supra.*  No one testified that the footrail was defective or out of repair or that its construction was improper.

The jury was justified in concluding that the plaintiff's foot became caught by reason of his placing his toe under the rail and attempting to arise without removing it.  Indeed, the only logical explanation of the mishap can be found in the extraordinary manner in which the plaintiff endeavored to leave his seat.  What he said on that score bears repetition.  "I put my left foot to the aisle, put my hand on the back of the seat in front....and pulled myself up and turned in order to go back, and, when I did that, I found my right foot was hooked....underneath the seat, and I stood up and turned around and this foot was caught, so I tried to pull it, and it was wedged, so I began to slide it and finally freed the foot and, at the same time, I fell in the aisle."

The duty of the defendants was to use the highest degree of care to maintain reasonably safe footrails for their passengers. To hold that that duty required a footrail so constructed as to prevent any possible accident to a passenger arising as did the plaintiff would make them insurers.

As the jury could not reasonably have concluded that the defendants were negligent, it is unnecessary to discuss whether, as a matter of law, the plaintiff was guilty of contributory negligence.

The verdict is set aside.